# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HECTOR SEGURA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:22-cv-01029-RBM-AHG<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**[Doc. 29]** |

Pending before the Court is Defendant City of San Diego's ("Defendant") motion for judgment on the pleadings under FRCP 12(c) ("MJP"). (Doc. 29.) On October 3, 2023, Defendant filed a statement of Plaintiff's non-opposition in support of Defendant's MJP. (Doc. 31.) On October 17, 2023, Plaintiff filed an opposition to Defendant's MJP. (Doc. 32.)[1] On October 24, 2023, Defendant filed a reply. (Doc. 33.)

In the MJP, Defendant argues Plaintiff fails to identify any policy or allege sufficient facts for any custom in his first amended complaint ("FAC"). (Doc. 29-1 at 4–6.) Defendant argues that Plaintiff's real complaint is not a concern with the City of San Diego's policies but with a violation of those policies. (*Id.* at 6.) Defendant argues Plaintiff

---

[1] Plaintiff titles his document as an opposition to Defendant's motion to dismiss (*Id.* at 1), but the Court understands the motion pertains to Defendant's MJP.

fails to establish that a government official with final policy-making authority ratified a subordinate's unconstitutional conduct and fails to identify which chief of police and mayor he references. (*Id.* at 6–7.)

Defendant also argues Plaintiff fails to plead sufficient facts for his failure to train claim concerning any training program and how it was inadequate, fails to plead a pattern of similar constitutional violations, and fails to link a failure in training to the alleged violation of his constitutional rights. (*Id.* at 7–8.) Defendant further contends Plaintiff's substantive due process claim should be dismissed because he fails to allege any egregious or outrageous behavior on the part of the City of San Diego. (*Id.* at 8.) Defendant also argues Plaintiff's equal protection claim should be dismissed because he fails to plead sufficient facts of purposeful discrimination. (*Id.* at 8–9.)

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1). For the reasons discussed below, Defendant's MJP (Doc. 29) is **GRANTED**.

## I.  BACKGROUND[2]

**A. Initial Incident**

"On April 24, 202[0], Plaintiff was cutting a tree to help the City of San Diego. Tony Naputi, a police officer … approached Plaintiff, said, 'come here' signally with his hand. He was in a fighting stance." (FAC ¶ 11.)[3]  Officer Naputi said, "are you the one with machete?" (*Id.* ¶ 12.) The machete, one of the tools Plaintiff used to cut the tree, was put away and not next to Plaintiff at the time. (*Id.*) Plaintiff tried to turn on his phone camera and Officer Naputi "jumped Plaintiff and put him in a choke hold." (*Id.* ¶¶ 13–14.)

///

---

[2] The following factual and claim recitation is taken from Plaintiff's FAC and does not reflect the factual or legal opinions of the Court.

[3] While paragraph 11 states the incident occurred on April 24, 2022, the FAC earlier states the incident occurred on April 24, 2020. (*See* FAC ¶¶ 1, 11.) It appears to the Court, based on its review of the FAC, that April 24, 2020 appears to be the correct date.

When the ambulance arrived, paramedics told Officer Naputi to let Plaintiff go and stated that Plaintiff "was having a mental break down." (*Id.* ¶ 15.) The paramedics kept telling Officer Naputi to get off of Plaintiff. (*Id.* ¶ 16.)

"A second officer arrived at the scene and said the officer was choking [Plaintiff] because the officer choking [Plaintiff] knows jiu jitsu." (*Id.* ¶ 17.) Officer Naputi told Plaintiff he was choking him because Plaintiff is a "criminal." (*Id.* ¶ 18.)

Plaintiff was "not arrested and [was] sent to a mental hospital that day. [He] felt [he] almost died and suffered a mental breakdown." (*Id.* ¶ 19.) As a direct and proximate result of the Defendants' conduct, Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures and rights to equal protection and the due process of law were denied. (*Id.* ¶ 20.) Plaintiff suffered physical and emotional pain and suffering, emotional trauma, loss of income and earning capacity, and seeks all costs allowed by law. (*Id.*) He seeks $50,000 in damages. (*Id.* ¶ 1.)

## B. Claims 1 Through 3 – Excessive Force, Failure to Supervise and Train, and *Monell* Violations

### 1. Excessive Force

Plaintiff alleges "[t]he choke-hold and physical take down and beating up of [Plaintiff] deprived [him] of [his] rights and privileges and immunities under the 4th, and 14th Amendments." (*Id.* ¶ 22.) His "pain and suffering and now trauma and emotional distress and now [he] panic[s] when [he] see[s] a police officer thinking they are going to kill [him] [and] [they] violated [his] 1983 rights under 42 United States Code as the police was acting under the color of authority and pursuant to the customs, policies, and procedures by the Defendants and CITY OF SAN DIEGO police department." (*Id.* ¶ 23 (cleaned up).)

### 2. Failure to Supervise and Train

The City of San Diego failed to supervise and train its police officers. (*Id.* ¶ 24.)

### 3. *Monell* Policy or Custom

The police department "[has] a culture of excessive force in dealing with citizens

3

who have mental issues and because of this, [Plaintiff] ha[s] been traumatized and afraid to file a lawsuit and incapacitated to do so and should have any statute of limitations tolled." (*Id.* ¶ 25.) The police department "has been harassing [Plaintiff] since [he] was 11 years old. They have been stalking [him] and pulling [him] over for no reason in [his] neighborhood. … [He] [has] always complained and the supervisors and the people in charge of the City of San Diego have done nothing about it." (*Id.* ¶¶ 26–27.) "Although the City of San Diego claims they follow their own rules they have for many years had a custom and policy of following certain members of the community. For example, [Plaintiff] ha[s] been targeted since [he] was 11 years old because [he] [is] a short, brown skin minority." (*Id.* ¶ 29.)

The City of San Diego was supposed to send a Psychiatric Emergency Response Team ("PERT"), but instead sent Officer Naputi. (*Id.* ¶ 28.) "This custom and practice of not sending the PERT team has been ratified by the Chief of Police and by the Mayor and its workers." (*Id.* ¶ 30.)

Internal Affairs informed Plaintiff that Officer Naputi "violated the policies about excessive force and not wearing a cam so to prove [Plaintiff's] case." (*Id.* ¶ 35.) "The City and the Police Officers have never in the past done anything to officers about not having cameras or calling the PERT team and about excessive force. These actions by Tony Naputi in other cases other than [Plaintiff's] have always been ratified so he knew that he was not going to be in trouble because he always engages in this behavior, and no one does anything to him." (*Id.* ¶ 36.)

**C. Commission on Police Practices' Letter**

Plaintiff received a letter from Internal Affairs stating officers violated policy of the San Diego Police Department and informed Plaintiff he had one year to file a lawsuit. (*Id.* ¶ 38.) In a May 12, 2021 letter attached to Plaintiff's FAC from the Commission on Police Practices ("Commission"), the Commission explained it reviewed an Internal Affairs Investigator's report and all related materials including the Internal Affairs findings concerning Plaintiff's allegations. (*Id.* at 6.) Regarding Plaintiff's allegation that "an

officer used force consisting of physical strength and the Carotid Restraint when he detained [Plaintiff] and [Plaintiff] suffered cuts and scrapes on [his] elbow and knees as a result of the force used in this incident[,]" Internal Affairs exonerated the officer because the alleged act was legal, justified, and proper and within policy procedure and law; the Commission agreed. (*Id.* at 7.) Regarding Plaintiff's allegation that "the officer was discourteous to [Plaintiff] when he called [him] a criminal[,]" Internal Affairs sustained the allegation finding the officer committed all or part of the alleged act of misconduct; the Commission agreed. (*Id.*)

Internal Affairs sustained, and the Commission agreed, that the investigation discovered that "[a]n officer violated Department Procedure 1.49 Section Ia&c [when] he failed to keep his BWC in buffer mode while on duty and activate his BWC while en-route to an enforcement related radio call." (*Id.*) Internal Affairs sustained, and the Commission agreed, that the investigation discovered that "[t]wo officers violated Department Procedure 1.04 Section VI.A, when they failed to describe all the force they used during [Plaintiff's] arrest and failed to complete a Use of Force, Blue Team Entry." (*Id.*)

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 & n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule.") (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court must not consider matters beyond the pleadings; otherwise,

such a proceeding must properly be treated as a motion for summary judgment. *Id.*; *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings … [o]therwise, the proceeding is converted to summary judgment.") (citations omitted).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). An action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### III.   DISCUSSION

Defendant argues Plaintiff's *Monell* claims fail as a matter of law because the FAC lacks sufficient allegations to establish a claim against the City of San Diego under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Doc. 29-1 at 4–8.) Defendant also argues Plaintiff's substantive due process claim should be dismissed because the FAC fails to allege sufficient facts of egregious or outrageous behavior. (*Id.* at 8.) Lastly, Defendant argues Plaintiff's equal protection claim should be dismissed for failure to allege sufficient facts of purposeful discrimination. (*Id.* at 8–9.) The Court will address each of Defendant's arguments in turn but will first address the timeliness of Plaintiff's Opposition.

**A. Non-Opposition**

On October 3, 2023, Defendant filed a statement of Plaintiff's non-opposition in support of Defendants' MJP. (Doc. 31.) Defendant explained that Plaintiff's opposition to its MJP was due on September 26, 2023 and Plaintiff did not file an opposition or statement of non-opposition as of Defendant's filing on October 3, 2023. (*Id.* at 1.) Defendant argues Plaintiff's failure to respond should be construed as consent or waiver under Civil Local Rule 7.1. (*Id.* at 3.) Defendant also explains that Plaintiff requested additional time for his opposition on September 26, 2023, specifically one week, and Defendant sent a joint motion to extend the time to respond, but Plaintiff never responded. (*Id.* at 3–4.) Defendant argues Plaintiff also failed to express any need for an extension until his opposition due date and failed to show good cause for an extension. (*Id.* at 4–5.) Defendant requests the Court construe Plaintiff's failure to file and serve his required moving papers as consent to the granting of Defendant's MJP. (*Id.* at 1–2.)

In Plaintiff's opposition to Defendant's MJP, Plaintiff argues that the City of San Diego rescinded its chokehold policy that damaged him due to Officer Naputi's actions. (Doc. 32 at 1–2.) Plaintiff explains that if he did not include that allegation in his FAC, he requests leave to amend to add it. (*Id.*) Plaintiff adds "[t]he City of San Diego did not train the officers well or otherwise they would not be doing the chokehold." (*Id.* at 2.) Plaintiff attached a June 1, 2020 news article about the San Diego Police Department's stopping the use of carotid restrains, or chokeholds, as a use-of-force procedure. (*Id.* at 4–6.) Defendant, in its reply, objects to consideration of Plaintiff's opposition and objects to Plaintiff's untimely request to amend the FAC. (Doc. 33 at 1, 4.)

In the Court's Prior Order on Defendant's Motion to Dismiss, the Court cautioned the parties "that in the event Plaintiff files an amended complaint, the Court will adhere to this District's Civil Local Rules and the Court's Civil Chamber Rules." (Doc. 9 at 9.) Accordingly, the Court is entitled to disregard Plaintiff's untimely opposition. However, given Plaintiff's *pro se* status, the Court will consider Plaintiff's untimely opposition. (Doc. 32). This is Plaintiff's final warning. The Court will not entertain any further

7

untimely filings and will strike or otherwise reject any future filings that fail to comply with the Local Rules, this Court's Civil Chamber Rules, and the Federal Rules.

### A. *Monell* claims

Municipalities cannot be held vicariously liable under 42 U.S.C. § 1983 for the actions of their employees. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694. To prevail in a civil action against a local governmental entity, the plaintiff must establish "(1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389–91 (1989)).

A plaintiff may establish municipal liability under 42 U.S.C. § 1983 in one of three ways. "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (internal quotation marks omitted) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, the plaintiff may establish that a governmental official with "final policy-making authority" ratified a subordinate's unconstitutional conduct. *Id*. at 1346–47 (citations omitted). Finally, a municipality may be held liable for inadequate training of its employees, but only where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390.

///

### 1. Policy

Defendant argues Plaintiff "does not offer a single citation of any section of the City of San Diego Municipal Code, a single policy, procedure, or order of its Police Department, or point to any 'formal governmental policy' pursuant to which any employee of the City of San Diego is supposed to have committed the constitutional violation or violations Plaintiff alleges." (Doc. 29-1 at 5.)  Plaintiff argues that the City of San Diego rescinded its chokehold policy that damaged him due to Officer Naputi's actions. (Doc. 32 at 1–2.) However, Plaintiff does not specify the City of San Diego's chokehold policy at issue anywhere in his FAC.  Accordingly, Plaintiff has failed to identify a policy amounting to deliberate indifference to his constitutional rights and that the policy was the moving force behind the constitutional violation of his rights.  *See Pearce*, 954 F.2d at 1474.

### 2. Custom

Defendant argues Plaintiff's allegation that the San Diego Police Department has a culture of excessive force in dealing with citizens who have mental health issues "is a generalized allegation offering no specific examples, no facts to support the notion that the 'culture' is so widespread that it constitutes a standard operating procedure, or how this culture relates to the subject incident." (Doc. 29-1 at 6.)  Defendant further argues that Plaintiff's allegation that they have a custom of following certain members of the community "lacks specific examples, suggests no inception date, and discusses no other litigation, publications, or studies [supporting] the notion that this purported 'custom' is longstanding or widespread enough to constitute a standard operating procedure." (*Id.*) Finally, Defendant argues Plaintiff's issue is not with a failure in policy, but with a violation of those policies. (*Id.*)

"Proof of random acts or isolated events is insufficient to establish custom." *Oyenik v. Corizon Health Inc.*, 696 F. App'x 792, 794 (9th Cir. 2017) (quoting *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1995)).  Rather, "[l]iability for improper custom … must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Id.* (quoting *Trevino v. Gates*, 99

F.3d 911, 918 (9th Cir. 1996)). "A custom is 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law.'" *J.M. by & Through Rodriguez v. Cnty. of Stanislaus*, No. 1:18-cv-01034-LJO-SAB, 2018 WL 5879725, at *3 (E.D. Cal. Nov. 7, 2018) (quoting *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) and *Los Angeles Police Protective League v. Gates*, 907 F.2d 879, 890 (9th Cir. 1990)). The Ninth Circuit has explained that "[w]hile one or two incidents are insufficient to establish a custom or policy, we have not established what number of similar incidents would be sufficient to constitute a custom or policy." *Oyenik*, 696 F. App'x at 794 (citations omitted).

Plaintiff fails to point to other instances for his three asserted bases of custom and practice above, including a culture of excessive force in dealing with citizens with mental health issues, harassing and stalking of following certain members of the community, and not sending the PERT team. (*See* FAC ¶¶ 25–30.) *See Oyenik*, 696 F. App'x at 794. The Court concludes Plaintiff fails to state sufficient allegations proving the existence of a practice so widespread, permanent, and well settled as to constitute a custom or practice.

### 3. Ratification

Defendant argues Plaintiff fails to establish a government official with final policy-making authority ratified a subordinate's unconstitutional conduct by not specifying which chief of police and mayor ratified Officer Naputi's conduct, failing to identify any other cases, and failing to describe how the purported ratification violated Plaintiff's constitutional rights. (Doc. 29-1 at 6–7.) Plaintiff alleges the chief of police and mayor ratified the custom and practice of not sending the PERT team and that Officer Naputi's conduct in other cases was ratified so he knew he would not get in trouble for engaging in this behavior. (FAC ¶¶ 30, 36.)

In *Lytle v. Carl*, the Ninth Circuit explained that a ratification theory of *Monell* liability requires "a plaintiff to show that the 'authorized policymakers' approve[d] a subordinate's decision and the basis for it ... The policymaker must have [had] knowledge of the constitutional violation and actually approve[d] of it." 382 F.2d 978, 987 (9th Cir.

2004).  The Court concludes Plaintiff's ratification claim fails because he does not identify specific policymakers with knowledge of Officer Naputi's alleged constitutional violation and approval of Officer Naputi's basis for his decision, or knowledge of any similar alleged violations in other cases.

### 4. Failure to Train

Defendant argues Plaintiff fails to plead facts for his failure to train claim concerning any training program and how it was inadequate, fails to plead a pattern of similar constitutional violations, and fails to link a failure in training to the alleged violation of his constitutional rights.  (Doc. 29-1 at 7–8.)  Plaintiff responds that "[t]he City of San Diego did not train the officers well or otherwise they would not be doing the chokehold."  (Doc. 32 at 2.)  While Plaintiff alleged the City of San Diego failed to supervise and train its police officers (FAC ¶ 24), Plaintiff has included no allegation suggesting "the need for more or different training [was] so obvious" such that the City of San Diego was "deliberately indifferent to the need."  *City of Canton*, 489 U.S. at 390.

### B. Substantive Due Process

Defendant argues Plaintiff's substantive due process claim fails because does not allege any conduct on the part of the City of San Diego that was sufficiently egregious or outrageous.  (Doc. 29-1 at 8.)  Plaintiff fails to respond to this argument and thus it is deemed waived.  *See Galaviz v. Fed. Bureau of Investigation*, Case No. C19-1611JLR, 2020 WL 208044, at *4 (W.D. Wash. Jan. 14, 2020) ("Federal courts consider the failure to respond to a motion to dismiss a claim to constitute a waiver of the claim at issue."); *Heraldez v. Bayview Loan Servicing, LLC*, Case No. CV 16-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016) ("Failure to oppose constitutes a waiver or abandonment of the issue.") (citing *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011)).

### C. Equal Protection

Defendant argues Plaintiff's equal protection claim fails because he fails to allege sufficient facts of purposeful discrimination.  (Doc. 29-1 at 9–10.)  Plaintiff fails to respond

to this argument and thus it is deemed waived. *See Galaviz*, 2020 WL 208044, at *4 ("Federal courts consider the failure to respond to a motion to dismiss a claim to constitute a waiver of the claim at issue."); *Heraldez*, 2016 WL 10834101, at *2 ("Failure to oppose constitutes a waiver or abandonment of the issue.") (citing *Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132).

### D. Leave to Amend

In his opposition, Plaintiff requests leave to amend his FAC. (Doc. 32 at 1–2.) Defendant, in its reply, objects to consideration of Plaintiff's opposition and argues it contains an untimely request to amend the FAC, to which Defendant objects. (Doc. 33 at 1, 4.) Generally, *pro se* litigants should be given an opportunity to amend their complaints. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000). But a court is not required to allow leave to amend if the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile. *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999) (internal citation omitted); *see also Dixon v. O'Connor*, 542 Fed. App'x 561, 562 (9th Cir. 2013) (affirming dismissal without leave to amend when further amendment would be futile).

The Court previously granted Plaintiff leave to amend his initial complaint. (Doc. 9 at 8.) Plaintiff failed to fix the pleading deficiencies in his *Monell* claims. Given Plaintiff's opportunity to fix these deficiencies, the Court determines that Plaintiff's *Monell* custom, ratification, and failure to train as well as his substantive due process and equal protection claims are futile. Therefore, those claims are **DISMISSED WITH PREJUDICE**. However, the Court determines Plaintiff's *Monell* policy claim concerning a chokehold policy articulated in his untimely opposition, not the FAC, is not necessarily futile and will **GRANT LEAVE TO AMEND** that claim. *See e.g.*, *Ramsey v. City of Santa Ana*, Case No. 8:21-cv-00825-JLS-KES, 2023 WL 3432264, at *8 (C.D. Cal. Mar. 17, 2023) (denying summary judgment on a *Monell* policy claim concerning a policy of the Santa Ana Police Department allowing officers to use a chokehold if a subject's "words ... demonstrate[ ] an

intention to be violent" and the subject "reasonably appears to have the potential to harm officers" that was potentially resulting in unconstitutional excessive force).

## IV.  CONCLUSION

For the foregoing reasons, Defendant's MJP (Doc. 29-1) is **GRANTED**. Plaintiff's *Monell* custom, ratification, and failure to train as well as substantive due process and equal protection claims discussed above are **DISMISSED WITH PREJUDICE**. Plaintiff's *Monell* policy claim is **DISMISSED WITH LEAVE TO AMEND**. Plaintiff may file a second amended complaint **on or before May 3, 2024**. Plaintiff's excessive force claim and *Monell* claim concerning officers not wearing cameras, which Defendant did not address, survive the MJP.

**IT IS SO ORDERED**.

DATE:  April 18, 2024

_____
HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE